THOMPSON v. UPDEGRAFF.

No. 35293. March 31, 1953.

Rehearing Denied April 21, 1953.

*255 P. 2d 912.*

E. G. Nahler, St. Louis, Mo., and Satterfield, Franklin & Harmon, Oklahoma City, for plaintiff in error.

Anglin, Stevenson & Huser, Holdenville, for plaintiff in error.

ARNOLD, J. This is a suit for damages to personal property.

The uncontradicted testimony of plaintiff reasonably tended to show the following state of facts:

Urie Updegraff was the owner of a truck and trailer designed for the transportation of livestock and engaged in the business of transporting livestock for hire. The driver of the truck, his employee, was in company with one Marvin S. Olivo, the owner of 43 head of cattle being transported from Ada to the stockyards at Tulsa. The truck was going eastward and approaching the intersection of Highway 33 running in the general course of north and south near Sand Springs. The driver intended to turn southward on Highway 33. There was a considerable down grade for a quarter of a mile or more in the road traveled by the truck and approaching said intersection. About halfway down said grade the driver put his foot on the brake pedal and found that the brakes of the truck were not operating. The air brakes from the truck to the trailer were not hooked up. His speed was so great upon arrival at the intersection that he decided he could not make the turn and went straight across Highway 33, through a tourist court, taking the center garage of a series of three and the automobile located in said garage with him, along an old abandoned road and upon the railroad tracks of defendant railway company where the truck and trailer were stalled. All lights, both headlights and clearance lights, on the truck and trailer were burning. A train whistled in the distance to the west. To the west of the place on the tracks where the truck stalled was a slight curve in the railroad tracks, then a straightaway for more than half a mile. The owner of the cattle took a couple of flares and an old quilt and ran up the railroad tracks in the direction of the approaching train for the purpose of apprising the defendant's trainmen of the position and peril of the truck-trailer. He placed one of the flares at the end of the slight curve in the tracks and where it would be visible from the half mile or more of the straightaway upon which the train was approaching, then ran 283 yards down the track toward the approaching train and as it came in sight began waving the other flare and the quilt. The engineer whistled at him to get off the track which he did. The train proceeded without slackening its speed until it crashed with the truck and trailer. The train traveled 400 feet after hitting the truck before it came to a stop. The speed of the train was approximately 45 miles per hour. The train was 783 yards, or almost half a mile, from the stalled truck when Olivo first signaled it. Upon inquiry by Olivo

of the engineer immediately after the collision the engineer admitted that he saw the distress or warning signals given by the owner of the cattle. That the value of the truck and trailer before the collision was $2,000; that they for use as such were destroyed; that he sold them as junk for $100.

A demurrer to the evidence was interposed and the trial court requested to direct a verdict in favor of the defendants. To the court's adverse ruling the defendant excepted and put on no evidence. The jury was instructed; it deliberated and returned a verdict for $1,000.

Motion for new trial was overruled and judgment was entered on the verdict, provoking this appeal.

By instruction No. 15 the court told the jury that the plaintiff's theory of recovery was based on "last clear chance". To this instruction the defendant excepted and saved his record. By instruction No. 16 the court told the jury that the defendant contended that there could be no recovery except on the theory of "last clear chance," and in this connection insisted that actual knowledge of the position of peril of plaintiff's truck and trailer on the part of the employees of the defendant in time to avoid the collision if ordinary care were exercised was necessary in order to permit recovery by plaintiff. Contrary to the theory of plaintiff that in "last clear chance" cases, under such facts as here a "last clear chance" instruction should be to the effect that the defendant knew or in the exercise of ordinary care should have known of the presence and position of peril of the truck-trailer, the court instructed the jury four times that knowledge of the presence and location of the trailer was an absolute prerequisite to the right of recovery on the part of plaintiff. These four instructions were given at the request of defendant.

He argues that the evidence is not sufficient to sustain the necessary finding of the jury that the employees of the railroad company, to wit: the engineer and fireman, knew of the position of peril of plaintiff's truck and trailer in time, in the exercise of ordinary care, to have avoided the accident. Though, there was no direct proof of knowledge of the position of the truck and trailer, the foregoing circumstances are sufficient to reasonably show that the employees of the railroad company, to wit: the engineer and fireman, or one of them, knew of the presence of the truck and trailer in time, in the exercise of ordinary care, to avoid the collision. The failure to exercise ordinary care and the proximate relationship thereof to ensuing damages may be proven by circumstances. Missouri Pacific Railroad Co. v. Gordon, 186 Okla. 424, 98 P. 2d 39.

Affirmed.

